## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALLEN COLEMAN,                          :
                                        :
    Plaintiff,              :        No. 3:20-CV-01588 (VLB)
                                        :
v.                                      :
                                        :        March 14, 2022
KILOLO KIJAKAZI, ACTING                 :
COMMISSIONER OF THE SOCIAL              :
SECURITY ADMINISTRATION,                :
    Defendant.             :
                                        :

**MEMORANDUM OF DECISION GRANTING MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER OR IN THE ALTERNATIVE MOTION FOR REMAND FOR A HEARING, [DKT. 19], AND DENYING MOTION AFFIRMING THE DECISION OF THE COMMISSIONER, [DKT. 23]**

      Before the Court is an administrative appeal filed by Plaintiff Allen Coleman, Jr. ("Claimant") pursuant to 42 U.S.C. § 405(g) following the denial of his application for Title XVI Social Security Income ("SSI") benefits.[1]  Claimant moves for an order reversing the decision of the Commissioner of the Social Security

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]."  42 U.S.C. § 405(b)(1).  The Commissioner's authority to make such findings and decisions is delegated to administrative law judges. 20 C.F.R. §§ 404.929 *et seq*.  Claimants can in turn appeal an administrative law judge's decision to the Social Security Appeals Council.  20 C.F.R. §§ 404.967 *et seq*.  If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States District Court.  Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

Administration[2] ("Commissioner") and remanding the case on the basis that Administrative Law Judge ("ALJ") Ronald J. Thomas erred by a) improperly weighing medical opinion evidence and b) incorrectly formulating Claimant's residual functional capacity.  (Dkt. 19-1 (Mot. Reverse Mem.) at 2.)  Claimant asks the Court to reverse the Commissioner's decision to deny benefits, or, in the alternative, to remand to afford Claimant a full and fair hearing.  (*Id.* at 2.)  The Commissioner moves to affirm the decision below, arguing that it is supported by substantial evidence.  (Dkt. 23-1 (Mem. in Supp. of Mot. to Affirm the Decision of the Comm'r) at 1-3.).  For the following reasons, Claimant's Motion for  Order Reversing the Decision of the Commissioner or, in the alternative, Motion for Remand for a Hearing is GRANTED, and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is DENIED.

I.    BACKGROUND

Claimant submitted a Statement of Facts, which the Commissioner adopts (and adds information).  (Dkts. 19-2 (Cl.'s SoF) & 23-2 (Res.'s SoF).)  The Court has reviewed the evidence and incorporates the adopted Statement of Facts and any additional corroborated evidence into this opinion.

Claimant was born on February 2, 1966, and alleges his disability began on January 13, 2017 when he was nearly 51 years old.  (Dkt. 15 (Admin. R.) at 23). [3]  On

---

[2] Since the filing of this action, the Commissioner has changed from Andrew M. Saul to Acting Commissioner Kilolo Kijakazi.  The Court therefore orders the case caption to reflect this change.

[3] When citing the administrative record, the Court will use "R." and cite to the bates number (e.g., "R. 203.")

July 31, 2018, Claimant applied for SSI benefits.  *Id.*  The Commissioner denied Claimant's application on October 12, 2018, (R. 96-108), and upon reconsideration on November 6, 2018.  (R. 109-20).

Claimant requested a hearing and appeared before the ALJ on September 27, 2019.  (R. 20-34, 148-50).  On November 18, 2019, the ALJ determined Claimant was not "disabled" under the meaning of the Social Security Act.  (R. 20-34).  In early January 2020, Claimant appealed, but the Appeals Council denied Claimant's request for review on August 25, 2020.  This rendered the ALJ's decision final.

Claimant filed this action on October 22, 2020.  (Dkt. 1 (Compl.)   The administrative record was uploaded on March 22, 2021, (Dkt. 15).  Claimant timely filed his Motion for  Order Reversing the Decision of the Commissioner or, in the alternative, Motion for Remand for a Hearing on June 18, 2021, (Dkt. 19), and the Commissioner filed its Motion for an Order Affirming the Decision of the Commissioner on August 31, 2021, (Dkt. 23).

A.    <u>Relevant Medical History</u>

The medical record shows that Claimant suffers from chronic back pain, including cervical disc dysfunction, thoracic disc degeneration, lumbar disc dysfunction; obesity; high cholesterol; hypertension; diabetes mellitus; and plantar fasciitis.[4]  The medical record is approximately 70 pages.  (R. 280-350.)  The Court will address Claimant's medical history only as it relates to issues raised by the parties.

---

[4] Claimant does not appear to contend that other injuries and ailments in the record are relevant to this SSI claim.

B.   <u>Medical Opinions</u>

Three individuals offered medical opinions, one who is a treating provider and two who are state agency medical consultants.

1.   *Treating Provider Dr. Brown Barone, Chiropractor*

Dr. Kathleen Brown Barone, D.C., O.T.R., is a chiropractor who first treated Claimant for injuries sustained in a motor vehicle accident, which occurred on December 13, 2005.  (Tr. 304-323.)   She diagnosed Claimant with (1) lumbosacral radiculitis or neuritis, (2) displacement of lumbar disc, (3) cervical related headache, and (4) cervical sprain/strain.  (Tr. 305.)  She also noted Claimant's past history of a work-related injury in September 1990.  (R. 307.)  Dr. Brown Barone opined there was a "direct and causal relationship" between the injuries and the motor vehicle accident and that the Claimant had "reached a plateau in his treatment program."  (R. 307, 309.)  Thereafter treatment ceased.

Claimant had another motor vehicle accident on March 8, 2006 and visited Dr. Brown Barone.  (R. 310.)  Following this accident, Brown Barone diagnosed Claimant as having suffered (1) cervical sprain/strain; (2) headache, cephalgia; (3) thoracic sprain/strain; (4) sprain/strain, sacroiliac region; (5) bilateral knee contusions and treated him for these injuries more than 16 times.   (R. 314.) Claimant complained about headaches and pain in his neck, shoulders, chest, back, hips, thighs, and knees.  (R. 311, 315.)  On June 13, 2006, Dr. Brown Barone no longer observed bilateral knee contusions but indicated he otherwise "reached a plateau in his treatment program."  (R. 309; Dkt. 19-2 ¶ 3.)

Dr. Brown Barone treated Claimant for injuries sustained in a  third motor vehicle accident that occurred on April 9, 2014.  (R. 318.)  Claimant's chief symptoms were (1) neck pain into bilateral arms, (2) upper back pain, (3) mid-back pain, and (4) low back pain.  (*Id.*)  At the final examination, Claimant continued to experience "(75%-100%) low back pain and stiffness that radiates into the left hip region, and increases with his activities of daily living."  (R. 321.)  This pain also radiated up to his mid-back and neck.  (*Id.*)  Claimant continued to describe difficulty climbing stairs and shopping, explaining that he used a scooter at Wal-Mart because of the pain hard floors caused him.  (*Id.*)  Dr. Brown Barone determined Claimant reached "maximum medical improvement" under her care and that he would have a "5% permanent physical impairment rating of the lumbar spine," including "low back pain, muscle guarding, and non-uniform loss of range of motion, and non-verifiable radicular complaints into the bilateral lower extremities."  (R. 323.)  She diagnosed Claimant with 1) chronic lumbosacral sprain/injury complex, (2) chronic lumbosacral radiculitis; (3) chronic cervical myofascitis/myalgia, and (4) chronic thoracic myofascitis, all secondary to the April 2014 motor vehicle accident.  (*Id.*)  Dr. Brown Barone explained Claimant is "incapable of returning to pre-injury status" and that he will be subject to accelerated degenerative disc disease with "pain flare-ups proportional to his activities of daily living."  (*Id.*)

### 2.  State Agency Medical Consultants

The first state agency medical consultant, Kyle Brum, issued the report of Claimant's medical records on October 12, 2018.  (R. 97-108.)  The assessed

medical records included those submitted by Claimant, Claimant's counsel, Dr. Brown Barone, General Practitioners of Hamden, Cornell Scott Hill Health Center, Yale New Haven Health, Dr. Kumar, and other unnamed providers.  (R. 99-102.)  The first medical consultant's findings were: (1) Claimant suffered from the severe impairment of Disorders of Back-Discogenic and Degenerative, and he had non-severe impairments of Diabetes Mellitus and Essential Hypertension, (R. 102);  (2) evidence supports Claimant's functioning is limited but that his statements about pain are only "partially consistent" because "intensity and persistence of such pain is not fully consistent or supported by overall objective evidence," (R. 103); (3) Claimant's lifting limitations include occasional lifting of 20 pounds and frequent lifting of 10 pounds, (R. 104); (4) Claimant's movement limitations include standing, walking, and/or sitting for about <u>six</u> out of eight hours in a day, and he can <u>occasionally</u> climb ramps and ladders, stoop, kneel, crouch, crawl, (R. 104); and (5) Claimant does not have any environmental limitations other than avoiding hazards, (R. 105).  The medical consultant ultimately concluded Claimant is not disabled because he can perform "light work." (R. 107.)

The second state agency medical consultant, David Pluta, issued the evaluation on November 6, 2018, on reconsideration from Claimant's initial denial. (R. 110-120.)  The second medical consultant assessed the same evidence, made the same findings, and drew the same "light work" conclusion as the first medical consultant.  (*Id.*)  He opined Claimant could perform jobs such as addresser, table worker, or dial marker.  (R. 119.)

### C.    Claimant's Hearing Testimony

Claimant's hearing before the ALJ took place the morning of September 27, 2019.  (R. 38.)  Claimant testified at length about his medical history, symptoms for various impairments, treatment regime, and the impact his medical issues have had on his ability to perform the functions of everyday life.  (R. 35-68.)

Claimant testified that he has not been able to sustain work since his last permanent job ended in 1991 after he sustained a work-related back injury.  (R. 41, 248.)  His back injury caused him excruciating pain in his back, legs, and feet.  (R. 41, 53.)  Since 1991, Claimant has only been able to work briefly at Barnes & Noble and as a caregiver for his daughter in 2001.  (R. 41, 248.)

Claimant testified he continues to suffer from chronic back pain.  (R. 44.)  The pain starts from his lower back and radiates through his spine to the top of his neck.  (R. 51.)  Claimant testified his back pain limits his mobility and daily life activities.  Rather than drive, he takes a bus or taxi. (R. 40-41, 47.)  He does not leave his home often, because he feels impeded by the three flights of stairs in his apartment building.  (R. 45, 47.)  In addition, everything Claimant does takes extra time due to his back pain.  For example, before Claimant's back injury he would walk down the apartment building stairs in two to three minutes; now, it takes him seven to eight minutes.  (R. 50-51.)  His fiancée helps him wash and dress, cooks for him, cleans the apartment and vacuums for him, does his laundry, and goes grocery shopping for him.  (R. 46.)  Claimant cannot do leisure activities like go to the movies (he cannot sit for long periods of time), play sports, or go to restaurants.  (R. 47-48.)

Claimant has not sought medical treatment for his back condition in recent years because he received documentation "from years ago, and from the state," that indicates he has reached maximum medical improvement. (R. 56.) Claimant has not been hospitalized for his back pain, and he refuses surgery because he is afraid of a poor surgical outcome that will limit him even more than his current state. (Tr. 45, 56.) While he received his plantar fasciitis diagnosis—a condition which causes heel pain—from "Dr. Free" in 2011, he does not receive treatment because his primary care physician, Dr. Kumar, has advised Claimant that medication will not eliminate the problem. (R. 43.)

Since July 16, 2018, Claimant visits Dr. Kumar every three months for pain management, treatment of his diabetes, and high cholesterol. (R. 42, 327.) He does not receive treatment for his plantar fasciitis. (R. 43-44.)

Claimant uses palliative medication for his conditions. (R. 41-42.) He takes Tylenol and/or Tramadol, which makes his back pain "bearable" for four to five hours. (R. 53.) Claimant uses a TENS unit for pain relief three to five times a day for 25-30 minutes each. (R. 54.) He uses lotion and orthotics to treat his plantar fasciitis. (R. 43-44.)

D.    <u>Vocational Expert Testimony</u>

Robert Paterwic testified as a vocational expert, explaining Claimant's residual functional capacity through various hypothetical scenarios. (R. 60-68.) Mr. Paterwic testified that, for the <u>first</u> hypothetical, an individual who is limited to <u>sedentary</u> exertion level and is unable to stay on task for 80% of the workday due to physical limitations is unemployable. (R. 60-61.)

For the <u>second</u> hypothetical, Mr. Paterwic was asked to opine on an individual of Claimant's age and education without past work experience who is limited to <u>light</u> exertion level subject to the following limitations: occasional twisting, squatting, bending, balancing, kneeling, crawling, and climbing; no climbing of ropes, scaffolds, or ladders; avoid hazards; can drive but is limited to no left or right foot controls; and is limited to simple, routine, repetitive work.  (R. 61.)  Mr. Paterwic testified that an individual with these limitations could work as a small parts assembler, electronics worker, and office helper.  (R. 62.)

The <u>third</u> hypothetical required Mr. Paterwic to opine on an individual of Claimant's age and education without past work experience who is limited to <u>medium</u> exertion level with the following restrictions: no climbing scaffolds, ropes, or ladders; avoid hazards;  can drive but is limited to no left or right foot controls; and is limited to simple, routine, repetitive work.  (R. 63.)  Mr. Paterwic testified such an individual could work as laundry laborer, hand packager, and cook helper. (R. 63-64.)

Apart from answering hypothetical scenarios, Claimant's attorney questioned Mr. Paterwic about the employability of an individual with reduced productivity.  Mr. Paterwic testified that an individual who is "off task" 15% or more of the time is unemployable.  (R. 66.)  Similarly, Mr. Paterwic testified that an individual who is 15% slower would probably be fired and, therefore, would be unemployable.  (*Id.*)  This is especially true for jobs in production.  (*Id.*)  Mr. Paterwic testified that, for individuals limited to light or medium exertion, there is no job that would permit lying down or reclining.  (*Id.*)

E.    The ALJ's Decision

On November 18, 2019, the ALJ made several findings in his decision, which are subject to review by this Court.  First, Claimant had not engaged in substantial gainful activity since his application date, July 31, 2018.  (R. 25).  Second, Claimant has severe impairments consisting of degenerative disc disease of the lumbar spine, plantar fasciitis, and diabetes mellitus.  (Id.).  His obesity diagnosis is a non-severe impairment because it only "minimally impaired his ability to function" and does not exacerbate his symptoms or limitations.  (R. 26.)  Third, none of Claimant's impairments meet or medically equal one of the listed impairments under Appendix 1 of 20 C.F.R. Part 404, Subpart P.  (R. 26-27.)  Four, Claimant's residual functional capacity is "light work" with the following provisions:

> [H]e can occasionally bend, balance, twist, squat, kneel, crawl, and climb, but can never climb ladders, ropes, or scaffolds; should avoid hazards such as heights, vibration, and dangerous machinery, but can drive an automobile; cannot operate foot controls; and can perform simple, routine, repetitious work.

(R. 27.)  Fifth, in light of Claimant's "age, education, work experience, and residual functional capacity," Claimant could perform a significant-enough number of jobs in the national economy to warrant a determination that he does not have a disability under the Social Security Act.  (R. 30-31.)

The ALJ also evaluated the medical opinions in the record.  With respect to Dr. Brown Barone, the ALJ assigned "little probative value" to her reports for three reasons: (1) they "reflect the claimant's alleged condition more than a decade ago"; (2) they were issued after Claimant's motor vehicle accident, "suggest[ing] the claimant was not seeking treatment, but rather trying to generate evidence for a potential legal claim"; and (3) the extent of Claimant's described limitations "are

not seen in more recent treatment records."  (R. 28-29 (emphasis added).)  Unlike Dr. Brown Barone, the ALJ found the state agency medical consultants "persuasive" due to their expertise in disability evaluation, familiarity with the evidentiary standard, and support from the medical records.  (R. 29.)

## II.    LEGAL STANDARD

The Social Security Act establishes that benefits are payable to individuals who have a disability.  42 U.S.C. § 423(a)(1).  "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."  42 U.S.C. § 423(d)(1).  An "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment must be one which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

In order to determine whether a claimant is disabled within the meaning of the Social Security Act , the ALJ must follow a five-step evaluation process as promulgated by the Commissioner:

1.    First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity ("Step One").

2.    If he is not, the Commissioner next considers whether the claimant has a "severe impairment," or "combination of impairments that is severe and meets the duration requirement," which significantly limits his physical or mental ability to do basic work activities ("Step Two").

3.    If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations ("Step Three").  If the claimant has such an impairment, the Commissioner

will consider him disabled without considering vocational factors such as age, education, and work experience.

4.    Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work ("Step Four").

5.    Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform ("Step Five").

20 C.F.R. § 404.1520.  The claimant bears the burden of proof at Steps One through Four.  *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work existing in significant numbers in the national economy.  *See id.*; *see also* 20 C.F.R. § 416.920(g).

When an ALJ determines a claimant is not "disabled" and the Commissioner upholds the decision, the claimant has the opportunity to seek judicial review from the district court.  *See* 42 U.S.C. § 405(g).  In this capacity, the district court performs "an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). The district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his/her conclusion, and whether the decision is supported by substantial evidence.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'") (quoting 42 U.S.C. § 405(g)).  Therefore, absent legal error,

12

this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position*. Id.*

"'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Biestek*, 139 S. Ct. at 1154 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citations omitted). "[A district court] must 'consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403–04 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)).

## III.    ANALYSIS

The parties do not dispute Steps One through Three. Claimant moves for reversal on two grounds related to his residual functional capacity, which applies

to Steps Four and Five.  First, Claimant argues the ALJ did not properly weigh medical opinion evidence.  Second, Claimant argues the ALJ did not perform a complete residual functional capacity assessment, because it failed to consider off-task behavior or Claimant's own testimony and thus incorrectly determined Claimant could perform "light work" instead of "sedentary work."  The ALJ's errors prevented Claimant from a full and fair hearing.  (Dkt. 19-1 at 2, 11-15.)

The Commissioner disputes both arguments.  Namely, the Commissioner states that the ALJ's residual functional capacity decision is based on substantial evidence, because it properly weighed the medical opinions and correctly evaluated Claimant's ability to perform "light work."  (*See* Dkt. 23-1 at 4-14.)

The Court agrees with Claimant.  For the following reasons, the Court REVERSES and REMANDS the ALJ's decision.

A.    Medical Opinions

"A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the following: (1) the ability to perform physical work demands; (2) the ability to perform mental work demands; (3) the ability to perform other work demands, such as seeing, hearing or using other senses; and (4) the ability to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).

For any claim filed after March 27, 2017 (such as Claimant's claim here), § 404.1520c of Title 20 of the Code of Federal Regulations sets forth the rubric for

evaluating the <u>persuasiveness</u> of medical opinions and findings.[5]   20 C.F.R. § 404.1520c(a).  Regardless of whether the medical opinion comes from a treating source or a non-treating consultant, the ALJ must consider the same factors: (1) supportability by medical evidence; (2) consistency with other medical sources; (3) relationship with the claimant; (4) the medical source's specialization; and (5) other factors such as familiarity with other evidence, the Social Security Act  disability program and evidence requirement, and whether new evidence impacts the medical opinion.  *See* 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors.  20 C.F.R. § 404.1520c(b)(2).  With respect to supportability, the persuasiveness of the medical opinion or finding is based on whether they are supported by relevant "objective evidence and supporting explanations."  20 C.F.R. § 404.1520c(c)(1).  As for consistency, the persuasiveness of the medical opinions or findings depends on the extent to which they are consistent with other medical opinions or findings. 20 C.F.R. § 404.1520c(c)(2).  The ALJ must explain how he considered the supportability and consistency factors.  20 C.F.R. § 404.1520c(b)(2).  However, the ALJ need not articulate how the other factors were considered.  *Id.*

---

[5] Claims filed before March 27, 2017, follow a different rubric articulated under § 404.1527 of Title 20 of the Code of Federal Regulations.  The two main differences for the pre-March 27, 2017 standard is that the ALJ must explain (1) the <u>weight</u> given to each medical opinion and  (2) treating sources are generally given deference over non-treating sources.  *See* 20 C.F.R. § 404.1527; *Burgess v. Astrue*, 608 F.3d 117, 128 (2d Cir. 2008) ("[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.")

### 1. *Dr. Brown Barone*

Given that Social Security Act cases filed after March 27, 2017 have only just started making their way to federal court for review, the number of cases addressing the sufficiency of an ALJ's supportability and consistency explanation is relatively minimal.[6]   The Court finds two recent cases in his district—with different outcomes—instructive here.

The first case, *Kyle Paul S. v. Kijikazi*, No. 3:20-CV-01662 (AVC), 2021 WL 6805715, at *7 (D. Conn. Nov. 16, 2021), involved an ALJ who failed to adequately explain the persuasiveness findings for two medical providers.  Notably, the ALJ never explicitly addressed either supportability or consistency.  The ALJ found the first treating source's medical opinion only "partially persuasive," explaining the claimant's "significant limitations completing a workday/workweek … does not agree with the underlying treatment notes showing that claimant had good response with medications and maintained a stable mood," citing a single treatment note.  *Id.*  Similarly, the second provider's residual functional capacity assessment was deemed "not persuasive" because it was completed with the mother and claimant and because the findings for "significant limitations" did not align with other records "showing mood stability with treatment, again citing a single treatment record."  *Id.* at *8.   The district court found that the ALJ impermissibly cherry-picked evidence that supported his determination, ignoring other aspects of the medical providers' lengthy treatment histories that cut against

---

[6] Presently, the Second Circuit has not ruled on a claim filed after March 27, 2017, and there are little more than 20 District of Connecticut cases that cite this regulation.

his findings even though they were consistent with each other and other medical records.  *See id.* at *7-8.

The second case, *Kathleen D. v. Commissioner of Social Security Administration*, No. 3:20CV01374(SALM), 2022 WL 354553 (D. Conn. Feb. 7, 2022), yielded a different outcome.  There, the ALJ explicitly addressed the supportability and consistency of the medical opinion, finding it "not persuasive."  *Id.* at *6.  With respect to supportability, the ALJ explained that the medical opinion relied on the claimant's subjective complaints but lacked support from objective testing to confirm the presence of symptoms.  *See id.* at *6.  The Court observed "the ALJ correctly focused on whether [the medical provider] supported his opinion with relevant, objective medical evidence."  *Id.* (emphasis in original).  As for consistency, the ALJ explained in detail how the opinion about the claimant's motor skills was "inconsistent with the evidence" from other medical sources.  *Id.* The Court noted the ALJ "cited numerous specific records" that were inconsistent, leading the Court to conclude the ALJ properly relied on substantial evidence.  *See id.* at *7.

In this case, the ALJ's explanation is more similar to that of the ALJ in *Kyle Paul*.  At the outset, the ALJ never explicitly addressed supportability or consistency for any of the medical opinions, as the *Kyle Paul* ALJ similarly failed to do.  But even reading between the lines cannot salvage the ALJ explanation's shortcomings.

With respect to Dr. Brown Barone's medical opinion, the ALJ gave Dr. Brown Barone's findings "little probative value" for three reasons: (1) "records reflect the

claimant's alleged condition <u>more than a decade ago</u>," (2) Dr. Brown Barone "examined the claimant on referral by the claimant's attorney after his 2005 automobile accident," and (3) "the degree of limitation described by Dr. Barone are [sic] not seen in more recent treatment records."   (R. 29.)   None of these three reasons concern supportability, because they do not compare Dr. Brown Barone's opinion to <u>her own</u> objective medical evidence.   *See* 20 C.F.R. § 404.1520c(c)(1). Even though the third reason—"the degree of limitation described by Dr. Barone are [sic] not seen in more recent treatment records"—relates to consistency, the ALJ did not reference any specific medical evidence, let alone contrast Dr. Brown Barone's opinion to specifics or cite medical records.   This is a stark contrast to the *Kathleen D* ALJ who "cited numerous specific records as 'evidence from other medical sources and nonmedical sources' that were inconsistent with the opinion."[7]  *Kathleen D.*, 2022 WL 354553, at *7 (citing 20 C.F.R. § 404.1520(c)(2)).   It even falls short of the *Kyle Paul* ALJ's explanation, which was remanded for citing a single treatment note*.

The Court is further concerned that the ALJ injected his personal judgments into evaluating Dr. Brown Barone.   For instance, the ALJ failed to mention Dr. Brown Barone's treatment reports from 2006 or 2014 (he only referred to the 2005

[7] **Specifically, the ALJ stated: "Turning to consistency, the opinion is inconsistent with the evidence of normal motor tone, normal fine finger movements, normal sensation with light touch, pinprick and temperature, normal proprioception and normal finger to nose movements.   They are also inconsistent with the record showing a normal gait with intact sensation over the entirely [sic] of feet and toes. They are further inconsistent with the record demonstrating normal motor testing, normal range of motion, normal strength and normal vibratory sense.   Tr. 51 (citations to the record omitted)."  *Id.* at *6.**

accident and "records from  more than a decade ago"), which included Dr. Brown Barone's finding that Claimant "has sustained a <u>5% permanent physical impairment rating of the lumbar spine</u>."  (R. 29, 323 (emphasis in original).)  The ALJ also concluded Dr. Brown Barone could not have been objective, because she was referred by a lawyer, "suggest[ing] the claimant was not seeking treatment but rather trying to generate evidence for a potential legal claim."  (R. 29.)  The reason for the referral is not relevant to any of the enumerated factors.  Moreover, the ALJ's speculation is not supported by evidence, nor does it take into account the treatment she provided.  For example, Dr. Brown Barone treated Claimant more than 16 times in 2006 over the course of several months.  (R. 310-317.)  As another example, Dr. Brown Barone directed Claimant to use an in-home TENS unit treatment three to four times a day for pain management, which he still uses at the same frequency.  (R. 43, 318-323.)  Claimant's ongoing treatment and use of Dr. Brown Barone's interventions cuts against the ALJ's speculation of misdeeds and dishonesty.

Nonetheless, the Court finds that the ALJ's failure to explain the supportability and credibility of Dr. Brown Barone's medical opinion is harmless error.  While the failure to properly consider a medical provider's opinion and/or explain the ALJ's assessment of the provider's opinion is typically grounds for remand, there is an exception: when applying the correct legal standard would still lead to the same conclusion.  *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary, however, [w]here application of the correct legal standard could lead to only one conclusion.") (internal quotation marks omitted);

*see also Young v. Kijakazi*, No. 20-cv-03604 (SDA), 2021 WL 4148733, at *11 (S.D.N.Y. Sept. 13, 2021) (ruling ALJ's failure to "acknowledge, let alone assess," a medical opinion constituted harmless error because there was "no reasonable likelihood" the result would have been different).   Here, it is undisputed that Claimant's most recent treatment from Dr. Brown Barone dates back to June 30, 2014, 2.5 years before the alleged disability onset date.   Claimant acknowledges that Dr. Brown Barone did not treat him during the relevant time period, and he does not posit that the ALJ failed to properly develop the record.   Because Dr. Brown Barone only treated Claimant prior to his disability onset date, there is no reasonable likelihood that a proper explanation under § 404.1520c would have altered the outcome.    Accordingly, the ALJ's error concerning Dr. Brown Barone does not warrant reversal.

### 2.  *Medical Consultants*

As for the two medical consultants, the ALJ found them persuasive because (1) they "are experts in social security disability evaluation," (2) they are "familiar with our disability programs and their evidentiary requirements," and (3) "they supported their determinations with persuasive rationale based on specific evidence of record."  (R. 29.)  As with Dr. Brown Barone, the ALJ utterly failed to explain supportability or credibility.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Rather, these three reasons speak only to the ancillary factors—(4) the medical source's specialization and (5) other factors such as familiarity with other evidence, the Social Security Act disability program and evidence requirement, and whether new evidence impacts the medical opinion—that must be considered but need not be

explained.  C.F.R. § 404.1520c(c)(4)-(5).  An ALJ cannot find a medical consultant "persuasive" merely because that individual reviewed the medical records.  *See Kyle Paul S.*, 2021 WL 6805715, at *8 ("[T]he ALJ found that the opinions of the State agency consultants are persuasive because '[t]hese assessments take into account all of the treatment records.'  This explanation falls  short of explaining how he considered supportability and consistency in determining the persuasiveness of the prior administrative findings, as he must under 20 C.F.R. § 404.1520c(b)(2).").  Accordingly, the ALJ failed to provide an adequate explanation for why the medical consultants were "persuasive."

Like the ALJ's assessment of Dr. Brown Barone's opinion, the Court finds that the ALJ's failure to explain the supportability and consistency factors for the medical consultants is harmless error.  The medical consultants possessed medical records during the relevant time period from relevant providers, including Drs. Brown Barone and Kumar.  (*See* R. 100-101, 113-14.)  They both determined Claimant's chronic back pain constituted a severe impairment and that his diabetes mellitus and essential hypertension were non-severe.[8]  (R. 102, 115.)  Neither determined Claimant's plantar fasciitis constituted an impairment.  (R. 103-105, 118.)  In addition, the first medical consultant found Claimant should avoid the hazard of "concentrated exposure," (R. 105), whereas the second medical consultant did not opine on hazards at all, (R. 115-20.)  These consultants' determinations were <u>less</u> favorable than the ALJ's ultimate ruling: that Claimant

---

[8] The ALJs labeled Claimant's back pain as "(DDD) Disorders of Back-Discogenic and Degenerative."  (R. 102, 115.)

suffered from three severe impairments—(1) degenerative disc disease of the lumbar spine, (2) plantar fasciitis, and (3) diabetes mellitus—and, in relevant part, that he "should avoid hazards, such as heights" and "cannot operate foot controls." (R. 27.)  Accordingly, remanding the case on this ground would not lead to a different outcome.  *See Zabala*, 595 F.3d at 409; *Young*, 2021 WL 4148733, at *11 (finding harmless error because the medical opinion that the ALJ failed to consider "was significantly *less* favorable to Plaintiff than the opinions that the ALJ did consider") (emphasis in original).

B.    <u>Residual Functional Capacity Not Supported by Substantial Evidence</u>

With respect to the ALJ's residual functional capacity determination, the Court finds the ALJ reversibly erred.

Claimant argues that the ALJ erred by concluding he could perform "light work" with certain restrictions, as opposed to "sedentary work." (Dkt. 19-1 at 11-12.)  Claimant contends the ALJ failed to consider a) all of claimant's impairments, b) his own testimony about pain, and c) the vocational expert's testimony about certain physical limitations.  (*Id.*)

The Commissioner states the ALJ's residual functional capacity determination of "light work" <u>with</u> restrictions is an acknowledgement of significant limitation that is supported by substantial evidence.  Namely, in addition to objective medical evidence, the ALJ considered Claimant's testimony and matters to which the vocational expert testified.  (Dkt. 23-1 at 6-8.)

The parties have missed the ALJ's most glaring error:  the ALJ deemed Claimant's diabetes mellitus a "severe impairment" but did not mention it at all

when evaluating Claimant's residual functional capacity.  The Code of Federal Regulations makes clear, "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' … when we assess your residual functional capacity."  20 C.F.R. § 404.1545(a)(2).  As the Second Circuit explained in *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012), remand is warranted when an ALJ fails to consider any kind of impairment—severe or non-severe—in assessing the residual functional capacity.  There, the ALJ determined the claimant's medical impairment was non-severe and failed to consider how it impacted her functional limitations.  *See id.* The Second Circuit reasoned, "[E]ven if this Court concluded that substantial evidence supports the ALJ's finding that [claimant's] mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [the claimant's] mental limitations when determining her RFC."  *Id.*

The ALJ's error in this case is even more egregious.  Namely, he failed to consider diabetes mellitus, a <u>severe</u> impairment.  What's more, the ALJ also did not consider Claimant's non-severe impairment of obesity at Steps Four and Five.  While hypertension and high cholesterol are mentioned by Claimant and the medical consultants, the ALJ ignored these impairments altogether.

It may be that the ALJ would have arrived at the same conclusion, i.e. that Claimant could perform "light work," if he had considered all severe and non-severe impairments.  But it is also possible that the ALJ would have determined Claimant was limited to, at a minimum, "sedentary work."  The Court is not in a

position to decide what the outcome would be, especially when diabetes mellitus, obesity, high cholesterol, and hypertension all impact chronic pain, mobility, and an individual's ability to participate in daily activities.  Because consideration of all severe and non-severe impairments could have lead to a different outcome, *Zabala*, 595 F.3d at 409, this case must be remanded.

Although the ALJ's decision must be reversed and remanded, the Court notes the ALJ adequately considered Claimant's testimony.  The ALJ devoted nearly two entire pages to Claimant's description about his back and plantar fasciitis pain and whether the symptoms were supported by objective evidence. (R. 27-28.)  "While the ALJ is required to take into account a claimant's reports of pain and other limitations, the ALJ is not required to accept those subjective complaints without question."  *McRae v. Colvin*, No. 3:14-cv-1868(WIG), 2016 WL 1323713, at *3 (D. Conn. Feb. 3, 2016).  So long as the ALJ's credibility findings are supported by substantial evidence, the Court will not reverse them.  *See Beault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[O]nce an ALJ finds facts, a court can reject those facts only if a reasonable factfinder would have to conclude otherwise.")*.*

The Court also notes the ALJ's decision <u>not</u> to discuss "off task" behavior was not reversible error.  Claimant has not pointed the Court to anything in the record, let alone objective medical evidence, discussing his need for a specified amount of "off task" behavior each workday.  Nor has the Court found any such evidence.  The vocational expert was not asked to evaluate how much time "off task" Claimant required.  Rather, he answered hypothetical questions, posed by

Claimant's counsel, about the percentage of "off task" behavior that would make a person unemployable.[9]  It would be impermissible for the ALJ to create a specific limitation based on his own judgment that's not supported by evidence.  *See McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *Edwards v. Comm'r of Soc. Sec.*, No. 18-CV-862-FPG, 2020 WL 4784583, at *3 (W.D.N.Y. Aug. 18, 2020) ("[T]he ALJ may not weigh evidence and somehow arrive at specific limitations that do not appear anywhere in that evidence.") (internal quotation marks omitted). Therefore, the ALJ did not err by failing to create an "off task" limitation or discuss the vocational expert's testimony about hypothetical "off task" behavior.

## V.    CONCLUSION

For the foregoing reasons, Claimant's Motion for  Order Reversing the Decision of the Commissioner or, in the alternative, Motion for Remand for a Hearing is GRANTED, and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is DENIED.   This case is REVERSED and REMANDED for additional proceedings consistent with this decision, including gathering evidence if warranted.  The Clerk is directed to close this case.

---

[9] The hypothetical questions posed to Mr. Paterwic were different than those posed to the vocational expert in *Cosnyka v. Colvin*, 576 F. App'x 43 (2d Cir. 2014).  There, "the vocational expert's opinion on whether there were jobs that Cosnyka could perform varied depending on how the off-task time was defined."  *Id.* at 46.  The Second Circuit reversed the ALJ's decision because there was "no substantial evidence for the ALJ's six-minutes per hour ["off task"] formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs Cosnyka could perform."  *Id.*  Mr. Paterwic simply was not asked these kinds of questions, and therefore his testimony was not dependent on "off task" evidence.

**IT IS SO ORDERED.**

_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 14, 2022.**